## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**ELIZABETH FINLEY, individually and on
Behalf of the Wrongful Death Beneficiaries of
THOMAS FINLEY, JR., DECEASED**                                    **PLAINTIFF**

**VERSUS**                                    **CAUSE NO. 3:18-cv-00078-DMB-RP**

**DAVID DYER; JAMAC LOGISTICS, LLC;
CORNERSTONE SYSTEMS, INC., RGL, INC.;
COFC LOGISTICS, LLC; INTERPOOL, INC.
d/b/a TRAC INTERMODAL; and JOHN DOES 1-10**                **DEFENDANTS**

_____

### REBUTTAL TO PLAINTIFF'S RESPONSE TO MOTION FOR
### JUDGMENT ON THE PLEADINGS OF CORNERSTONE SYSTEMS, INC.

_____

**COMES NOW** Cornerstone Systems, Inc., through counsel, and files its *Rebuttal to Plaintiff's Response to Motion for Judgment on the Pleadings* [Doc. #22], showing, as follows:

### I. PRELIMINARY STATEMENT

The issue before the Court is the product of not having any clear, binding precedent from the Court of Appeals for the Fifth Circuit or the United States Supreme Court involving the Federal Aviation Administration Act of 1994 ("FAAAA") *and* the specific causes of action made by Plaintiff in this case. Instead, the parties have cited binding (and, at times, persuasive) authorities involving elements of the preemption analysis and have argued over how they have been applied by the District Courts across the country. However, not only have the various decisions been inconsistent between Circuits and States, they have been inconsistent within the same district and division. The issue before the Court is not an easy one. Consequently, Cornerstone Systems, Inc.'s ("Cornerstone") focus with this Rebuttal was to try to define and narrow the disagreements with the parties and identify any points of agreement that were not explicitly noted.

## II. <u>ARGUMENT</u>

Cornerstone is sympathetic to the devastation caused by this accident. Nevertheless, Plaintiff's "Introduction" and "Facts" sections of her Response are mostly opinions and arguments, not facts before the Court. This motion is judged on the pleadings only. Consequently, to the extent the statements contained in these sections are not contained in the pleadings, they must be disregarded for purposes of this motion.

**A. The airline cases are instructive, but distinguishable as to the ultimate issue.**

Cornerstone agrees with Plaintiff that "[t]he ADA interpretations are instructive, and it cannot be lost on this Court that the FAAAA replaced the then-existing patchwork of interstate trucking laws with a uniform federal standard." Doc. #51, p. 7. Indeed, the preemption-clause language in the FAAAA is informed by decisions interpreting parallel language in the preemption provision of the ADA. This is not in issue.

The parties clearly disagree on *how* these cases are instructive. Cornerstone's position is clear: The meaning of the term "service" applicable to the transportation of property is controlled by the United States Supreme Court's decision in *Rowe v. New Hampshire Transp. Ass'n,* 552 U.S. 364, 371, 128 S. Ct. 989, 995, 169 L. Ed. 2d 933, 940 (2008). The airline cases interpret the term "service" from the ADA in the context of airline functions, i.e., refreshment services, keeping areas free from tripping hazards, and overhead compartment storage issues. The service of arranging for the transportation of property is different. Consequently, Plaintiff's citation to the ADA cases as support for the statement that "preemption did not apply in cases for personal injury under state law" is misleading in this context. Doc. #51, p. 8.

The following excerpts from Cornerstone's memorandum are worth restating on this issue:

> Plaintiff's state-law negligent hiring claim has the direct effect of dictating
> the scope and level of services that a broker like Cornerstone provides in selecting

a motor carrier. Plaintiff's claims are expressly grounded in allegations that Cornerstone offered to its customers the broker service of selecting a motor carrier, but neglected—as part of that service—to perform necessary *additional* investigation and evaluation services. This is just like the state law preempted in *Rowe*, which sought to dictate and prescribe the services to be provided in connection with the shipment of tobacco. *Rowe*, 522 U.S. at 996-97. Because the plaintiff's negligent hiring claim has a direct and indisputable connection to the services of a broker with respect to the transportation of property, it falls squarely within the preemptive reach of the FAAAA.

\* \* \*

Moreover, federally registered brokers operating nationwide would face an inconsistent array of common-law mandates throughout the 50 States dictating, shaping, and constraining the services they provide. As the Supreme Court noted in *Rowe*, such a "state regulatory patchwork is inconsistent with Congress's major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." *Rowe*, 552 U.S. at 373. And, while some might find it socially beneficial to impose additional burdens and service requirements on transportation providers like brokers, Congress has spoken clearly in the FAAAA and state law, in any form, is not permitted to impose such additional service requirements. *See Rowe*, 552 U.S. at 377-78 (Ginsburg, J., concurring) (noting that FAAAA preemption is broad and clear and that it is up to Congress to impose any additional regulations it may think wise or necessary).

Doc. #23, p. 8.

Moreover, Plaintiff's focus on the occurrence of personal injury as a basis against preemption is unfounded in the law. As Cornerstone has previously stated, "[t]here is no basis in the text of the FAAAA that suggests in any way that preemption depends on the nature of the damages or injury involved. Nor do the cases refusing to enforce preemption identify any textual basis to justify such a distinction or attempt to reconcile their holdings with those of courts finding preemption in property damage cases." Doc. #23, p. 12.

### B. Plaintiff's claims directly relate to Cornerstone's core services.

The parties disagree as to whether the Plaintiff's claims "relate to" the services Cornerstone provides as a broker. This analysis requires a study of Plaintiff's claims, which are that Cornerstone negligently hired the motor carrier or its driver or entrusted both with freight. This specific claim is what makes the *DNOW* decision cited by Plaintiff an authority that actually supports

Cornerstone's position. *DNOW, LP v. Paladin Freight Solutions, Inc.*, No. 4:17-cv-3369, 2018 WL 398235 (S.D. Tex. Jan. 12, 2018). *DNOW* stated the following: "DNOW's [the plaintiff] negligence theories all concern the operation of the vehicle that caused the accident; none concerns Paladin's [the broker] procedures for selecting or monitoring carriers." *Id.* at *3. The Texas District Court noted that while a claim for negligent hiring or entrustment against a broker "might implicitly impose constraints on the operations of a freight broker like Paladin," a general negligence claim about the unsafe operation of a truck does not. *Id.* at *10. The focus of Cornerstone's relief is the negligent hiring and entrustment claim made by Plaintiff. The *DNOW* decision, which found against preemption, was not based on claims of negligent hiring or entrustment, but rather general negligence claims concerning the operation of vehicle.

The following excerpt from Cornerstone's memorandum is worth restating on this issue:

> Some courts have concluded that the state-law negligent-hiring action was only remotely related to the alleged services of the broker. This rationale does not withstand scrutiny and, in any event, is inapplicable here because the Complaint expressly alleges facts establishing that Plaintiff's negligent hiring and entrustment claims are directly related to the service Cornerstone provides as a broker. The Complaint alleges that Cornerstone is a broker in the business of selecting motor carriers to haul freight. Doc. #1-1, p. 6 [Complaint, ¶¶ 36-38]. Cornerstone selected Jamac to haul the freight in this case. *Id.* The Complaint then alleges that Cornerstone is liable for the injuries in this case because it failed to select a "competent and careful motor carrier." *Id.* Plaintiff's state law negligent hiring claims are therefore directly related to the broker service that Cornerstone provides to its customers.

Doc. #23, p. 13 (internal citations omitted).

**C. The exemption contained in the FAAAA is inapplicable.**

The parties disagree as to whether an exemption contained in the FAAAA is applicable in this context. Cornerstone addressed this issue in its Motion (Doc. #23, p. 16) and Plaintiff addressed it in her Response (Doc. #51, p. 13). The United States Supreme Court has addressed this specific provision. *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424,

439, 122 S. Ct. 2226, 153 L. Ed. 2d 430 (2002). The purpose of the Section 14501(c)(2)(A) carve out is to ensure that FAAAA preemption does not restrict the preexisting and traditional police power of the States over safety. *Ours Garage and Wrecker Service, Inc.*, 536 U.S. at 439. "[T]he exemption in question is for state safety *regulation*." *Id*. at 441 (emphasis added). The issue in *Ours Garage* was whether the Section 14501(c)(2)(A) carve out applied only to safety regulations enacted at the state level or whether it applied as well to the regulatory authority delegated to state political sub-divisions. In holding that the exemption applied to the regulatory authority of a state sub-division, the court made clear that the purpose of the exemption was directed towards the "State regulatory process." *Id*. at 440. *See also Bond v. U.S.*, 134 S. Ct. 2077, 2086, 189 L. Ed. 2d 1 (2014) ("The States have broad authority to enact *legislation* for the public good—what we have often called the 'police power.'") (emphasis added).

The conclusion that the Section 14501(c)(2)(A) exception does not apply to state common law claims is further supported by the text and structure of the FAAAA preemption provisions. The broad preemptive language of the FAAAA expressly applies to all form and manner of state law, whether law, regulation, or any other provision of having the effect of law. 49 U.S.C. § 14501(c)(1). However, the exception to preemption applies more narrowly, only to one limited aspect of state law: safety regulatory authority. 49 U.S.C. § 14501(c)(2)(A). A state-law cause of action for negligent hiring is not a regulation and is not created or enforced through any state safety regulatory authority. For that reason, the Section 14501(c)(2)(A) exception does not encompass state common law negligence claims. *See Huntington Operating Corp. v. Sybonney Exp., Inc.*, 2010 U.S. Dist. LEXIS 55591, at *7, 2010 WL 1930087 (S.D. Tex. May 11, 2010) (citing *Ours Garage*, 536 U.S. 424).

In support of its argument, Plaintiff cites to a 2015 United States District Court opinion from Texas. *Morales v. Redco Transport, Ltd.*, 2015 WL 9274068 (S.D. Tex. Dec. 21, 2015). The *Redco* decision is a prime example of the inconsistency of rulings within the same United States District Court. It is true that *Redco* found that a plaintiff's personal injury claim of negligence against a transportation broker was exempted from preemption as part of a state's safety regulatory authority. *Id.* at *7. However, in reaching this decision, *Redco* acknowledged being at odds with the *Huntington* decision from the same district court entered a few years earlier, offering only that "negligence claims can certainly fall within states' regulatory authority . . . ." *Id.* at *6-7. Respectfully, and for the reasons above, Cornerstone submits that *Redco*'s reasoning misconstrues the Supreme Court decision of *Ours Garage*.

**D. The *Volkova* decision is current persuasive precedent with similar facts.**

The *Volkova* decision cited and attached as an exhibit by Cornerstone in its Motion is, according to the undersigned's research, the most recent, analogous decision involving negligent hiring claims made against a broker by a wrongful death beneficiary and which arise from an automobile accident. *Volkova v. C.H. Robinson Co.*, 2018 U.S. Dist. LEXIS 19877, 2018 WL 741441 (N.D. Ill. February 7, 2018). All of the arguments made by Plaintiff in this case were made by the *Volkova* plaintiffs and addressed in the Court's ruling. Cornerstone respectfully submits that the findings contained in *Volkova* are consistent with the underlying decisions in the Fifth Circuit regarding preemption, except for the lone Texas ruling of *Redco* addressed above.

### III. <u>CONCLUSION</u>

Cornerstone respectfully submits that *all* claims made against it are preempted. However, Cornerstone has outlined in its Motion and supporting Memorandum that two (2) types of claims were made against it: (1) Cornerstone negligently hired or entrusted Jamac and Dyer and (2)

Cornerstone is "legally responsible for the wrongful conduct of Dyer." This Rebuttal and Plaintiff's Response has focused on preemption of the negligent hiring/entrustment claims. Consequently, the Court has the option of granting Cornerstone's motion in full, denying the motion in full, or a combination of both given the two types of claims.

**WHEREFORE, PREMISES CONSIDERED,** Cornerstone Systems, Inc. requests dismissal of all claims asserted against it and requests any other relief as this Court may deem necessary and proper.

RESPECTFULLY SUBMITTED, THIS, the 3rd day of August, 2018.

CORNERSTONE SYSTEMS, INC.

By:    /s/ James R. Moore, Jr.
       James R. Moore, Jr. (MSB #3445)
       R. Eric Toney (MSB #102349)
       ATTORNEYS FOR CORNERSTONE
       SYSTEMS, INC.

OF COUNSEL:

**COPELAND, COOK, TAYLOR & BUSH, P.A.**
600 Concourse, Suite 100
1076 Highland Colony Parkway (39157)
Post Office Box 6020
Ridgeland, MS 39158
Telephone: (601) 856-7200
Facsimile: (601) 856-7626
jmoore@cctb.com
etoney@cctb.com

## **CERTIFICATE OF SERVICE**

I, James R. Moore, Jr., of counsel for Cornerstone Systems, Inc., do certify that the above and foregoing was electronically filed with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Casey L. Lott, Esq.
Thomas O. Cooley, Esq.
Langston & Lott, PLLC
Post Office Box 382
Booneville, Mississippi 38829
*Attorney for Plaintiff*

Carl Wyatt, Esq.
Glassman, Wyatt, Tuttle & Cox P.C.
26 North Second Street
Memphis, Tennessee 38103
*Attorney for Defendants, David Dyer, Jamac Logistics, LLC, COFC Logistics, LLC, and Interpool, Inc. d/b/a Trac Intermodal*

I also certify that on August 3, 2018, I mailed the foregoing to the following non-ECF participants:

Ronald S. Groskopf
Judith H. Groskopf
RGL, Inc.
3278 Red Village Road
Lyndonville, Vermont 05851

THIS the 3rd day of August, 2018.

/s/ James R. Moore, Jr.
James R. Moore, Jr.
R. Eric Toney