IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ELIZABETH FINLEY, Individually and**   **PLAINTIFF**
**on behalf of the Estate and Wrongful**
**Death Beneficiaries of Thomas Finley, Jr.,**
**Deceased**

**V.**   **NO. 3:18-CV-78-DMB-JMV**

**DAVID DYER, et al.**   **DEFENDANTS**

### ORDER

This personal injury action is before the Court on Cornerstone Systems, Inc.'s motion for judgment on the pleadings. Doc. #22.

### I
### Procedural History

On January 2, 2018, Elizabeth Finley, acting individually and on behalf of the wrongful death beneficiaries of Thomas Finley, Jr., filed a complaint in the Circuit Court of Marshall County, Mississippi, naming as defendants David Dyer, Jamac Logistics, LLC, Cornerstone Systems, Inc., RG Logistics, LLC, COFC Logistics, LLC, Interpool, Inc. d/b/a Trac Intermodal, and "John Does 1-10." Doc. #2 at 1, 10. The complaint alleged that Thomas[1] died when the car he was driving was struck by a freightliner "owned by Intermodal with the freight being brokered and/or shipped through RG, Cornerstone and/or COFC through a joint venture with Jamac." *Id*. at 1, 3. Of relevance here, the complaint asserted two claims against Cornerstone: a claim for negligent hiring, and a claim for negligent entrustment. *Id*. at 7–8. Additionally, while not asserted as a separate count, the complaint alleged:

Dyer was, at all times pertinent to this action, an agent, employee, and/or servant

---
[1] To avoid confusion, the Court will use the Finleys' first names.

of Jamac and/or Cornerstone, RG, COFC, Interpool and John Doe Defendants 1 through 10. Therefore, Jamac and/or Cornerstone, RG, COFC, Interpool and John Doe Defendants 1 through 10, are liable for Dyer's acts under the doctrine of *respondeat superior*.

*Id*. at 4.

Elizabeth's state court action was removed to this Court on April 2, 2018,[2] and the defendants subsequently filed separate answers. Docs. #7, #12, #14, #15, #16. On June 19, 2018, Cornerstone filed a motion for judgment on the pleadings. Doc. #22. With leave of the Court, on July 19, 2018, Elizabeth filed an amended complaint which contains the same substantive allegations but substitutes "RGL, Inc." as a defendant in place of RG Logistics.[3] *See* Doc. #41 at 1. After filing the amended complaint, Elizabeth responded to the motion for judgment on the pleadings on July 27, 2018.[4] Doc. #51. Cornerstone replied on August 3, 2018. Doc. #57.

## II
## Standard

Federal Rule of Civil Procedure 12(c) authorizes a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A motion for judgment on the pleadings "may dispose of a case when there are no disputed material facts and the court can render a judgment on the merits based on the substance of the pleadings and any judicially noticed facts." *Linicomm v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018) (internal quotation marks omitted). "To avoid dismissal, a plaintiff must plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotation marks omitted).

---

[2] Doc. #1.

[3] Because the amended complaint is substantively identical to the original, the motion for judgment on the pleadings is not moot. *See Villas at Parkside Partners v. City of Farmers Branch*, 245 F.R.D. 551, 557 (N.D. Tex. 2007) ("If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.") (quoting 6 FED. PRAC. & PROC. CIV. § 1476 (3d ed.)).

[4] Elizabeth was granted a requested extension to respond. Doc. #35.

In making this determination, a court "must construe the complaint in the light most favorable to the plaintiff." *Id*.

### III
### Relevant Facts

At an unknown time, Cornerstone, acting as a broker, contracted with Jamac, its independent contractor, to serve as a motor carrier and transport certain freight hauled by Jamac pursuant to a Broker-Drayage Intermodal Agreement. Doc. #61 at ¶ 36; Doc. #41 at ¶ 36. Jamac, in turn, retained Dyer to drive the goods. Doc. #41 at ¶¶ 28–34. While transporting the freight, Elizabeth alleges that Dyer negligently crossed the median and struck Thomas' car, killing him. *Id*. at ¶¶ 13–17.

### IV
### Analysis

In its motion, Cornerstone argues that it is entitled to dismissal of the negligent entrustment and negligent hiring claims because such claims are preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA").

#### A. Federal Preemption

"Under the federal Constitution, both the National and State Governments have elements of sovereignty the other is bound to respect." *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quotation marks omitted). However, the Supremacy Clause of the federal Constitution makes clear that federal laws "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Consistent with this dictate, "Congress may preempt state legislation by enacting a statute containing an express preemption provision." *City of El Cenizo*, 890 F.3d at 176. Absent express preemptive language, the United States Supreme Court has "recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is so pervasive as

to make reasonable the inference that Congress left no room for the States to supplement it," and "conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (citations and quotation marks omitted).

"Evidence of pre-emptive purpose is sought in the text and structure of the statute at issue." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Where, as here, the statute contains an express preemption clause, a court must "identify the domain expressly pre-empted because an express definition of the pre-emptive reach of a statute supports a reasonable inference that Congress did not intend to pre-empt other matters." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001) (alterations, citations, and quotation marks omitted). To accomplish this, a court must "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent."[5] *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011).

## B. History of FAAAA

Prior to 1978, the interstate airline industry in the United States was tightly

---

[5] Elizabeth urges the Court to apply a presumption against preemption of the "historic police powers of the States." Doc. #51 at 4 (emphasis omitted). For years, the United States Supreme Court followed the general rule that

> in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, [a court] start[s] with the assumption that the historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (alterations and quotation marks omitted). However, the Supreme Court recently held that invocation of a presumption against preemption was inappropriate where the statute "contain[ed] an express pre-emption clause." *Puerto Rico v. Franklin Calif. Tax Free Tr.*, 136 S. Ct. 1938, 1946 (2016). In the wake of this decision, the viability of the presumption against preemption with regard to the FAAAA is unclear. *Compare Watson v. Air Methods Corp.*, 870 F.3d 812, 817 (8th Cir. 2017) (no presumption against preemption in action involving analogous Airline Deregulation Act), *with Lupian v. Joseph Cory Holdings LLC*, No. 17-2346, 2018 WL 4623718, at *3 n.5 (3d Cir. Sep. 27, 2018) (applying presumption). This Court is inclined to believe that a presumption against preemption is no longer appropriate with respect to the FAAAA. Because the existence of a presumption would not alter this Court's decision, it need not reach the issue here.

regulated by the federal government. Congress determined in 1978 that both consumers and the economy would benefit from open competition in the airline industry, especially in the areas of rates and services, and that this could be achieved by economic deregulation of the industry. As a result, the Airline Deregulation Act of 1978 (the "ADA") was enacted. To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision, prohibiting the States from enforcing any law relating to rates, routes, or services of any air carrier.

The Motor Carrier Act of 1980, similarly deregulated the motor carrier industry, but it did not preempt state regulation of the industry. Over the next fourteen years, however, state economic regulation of motor carrier operations had become a huge problem for national and regional carriers attempting to conduct a standard way of doing business. Congress addressed this concern in 1994 when it enacted the FAAAA, which expressly preempted certain state regulation of the trucking industry.

*Lupian v. Joseph Cory Holdings LLC*, No. 17-2346, 2018 WL 4623718, at *3–4 (3d Cir. Sep. 27, 2018) (alterations, citations, and quotation marks omitted).

The FAAAA's preemption provision provides that, subject to certain exceptions, one of which is discussed in detail below:

a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

"Although § 14501(c)(1) otherwise tracks the ADA's air-carrier preemption provision, the FAAAA formulation contains one conspicuous alteration—the addition of the words 'with respect to the transportation of property.'" *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013) (citations omitted). This phrase is clarified by 49 U.S.C. § 13102(23), which defines the term "transportation" as including:

(A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or

5

property, or both, regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

### C. Analysis

By its terms, the FAAAA preempts any "law, regulation, or other provision having the force and effect of law" which is "related to a price, route, or service" of brokers (or other covered businesses), so long as the relation to the service is "with respect to the transportation of property." *See Pelkey*, 569 U.S. at 261 ("Pelkey's claims escape preemption, we hold, because they are not 'related to' the service of a motor carrier 'with respect to the transportation of property.'"); *see also Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 23 (1st Cir. 2014) ("The second phrase excludes from FAAAA preemption any state law that affects a motor carrier's prices, routes, or services outside the context of the transportation of property."). Because common law rules, such as tort claims, "fall under the scope of the FAAAA," *Krauss v. IRIS USA, Inc.*, No. 17-778, 2018 WL 2063839, at *4 (E.D. Pa. May 3, 2018) (collecting cases); and because there is no dispute Cornerstone is a "broker"[6] as that term is used in the FAAAA, preemption will be appropriate if Elizabeth's claims for negligent hiring and negligent entrustment are "related to" a price, route, or service with respect to transportation offered by Cornerstone.

#### 1. "Related to"

"The phrase related to … embraces state laws having a connection with or reference to … rates, routes, or services, whether directly or indirectly." *Pelkey*, 569 U.S. at 260 (internal quotation marks omitted). However, "the breadth of the words 'related to' does not mean the sky

---

[6] Under the FAAAA, the term "broker" is defined as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

6

is the limit." *Id*. Rather, section 14501(c)(1) "does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." *Id*. (internal alterations and quotation marks omitted).

While it appears the Fifth Circuit has not addressed the extent to which state tort laws are "related to" "rates, routes, or services" in the context of the FAAAA, it has done so in the context of the ADA. *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 339–40 (5th Cir. 1995); *Malik v. Cont'l Airlines, Inc.*, 305 F. App'x 165, 168–69 (5th Cir. 2008). Insofar as the "[t]he FAAAA's preemption provision is in pertinent part identical to the preemption provision of the ADA and is generally construed in pari materia,"[7] the Court deems this authority extremely persuasive, if not binding. *See Dnow, L.P. v. Paladin Freight Sols., Inc.*, No. 4:17-CV-3369, 2018 WL 398235, at *4 (S.D. Tex. Jan. 12, 2018) (similarities between ADA and FAAAA rendered *Hodges* "tantamount to binding authority" in FAAAA case).

In *Hodges*, the Fifth Circuit held that the ADA did not preempt a "state law tort claim for physical injury based on alleged negligent operation of [an] aircraft." 44 F.3d at 335. In reaching this conclusion, the Fifth Circuit held:

> "Services" generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these contractual features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

*Id*. at 336 (alteration omitted).

---

[7] *Tobin v. Fed. Express Corp.*, 775 F.3d 448, 454 n.4 (1st Cir. 2014).

Thus, *Hodges* distinguished between claims premised on "the operation and maintenance of aircraft," which fall outside the ADA's definition of "services," and "contractual features of air transportation" "such as ticketing, boarding procedures, provision of food and drink, and baggage handling," which do not. *Id*. at 336. Ultimately, the Fifth Circuit concluded that because "Hodges alleged that Delta was negligent in allowing the case of rum to be stowed in an overhead storage bin," the claim "derive[d] from the operation of the aircraft" rather than services of the air carrier and was, therefore, not preempted. *Id*. at 340.

Consistent with *Hodges*, the Fifth Circuit in *Malik* found that state law claims based on loss of luggage "have a connection with [the defendant's] baggage handling services," so as to warrant preemption. 305 F. App'x at 168–69. The Court reached this conclusion by once again drawing a distinction between claims deriving from (or "centered on") airline operations, which are not preempted, and those derived from "contractual features" of air services, which are preempted. *See id*. at 169 ("If Malik's bags had caught on fire during a plane crash, her contention might have merit. But her claims are centered on airline personnel's alleged mishandling of her bags, not damage from the way in which the plane was flown.").

Recently, in *Dnow*, a district judge in the Southern District of Texas considered the impact of *Hodges* and FAAAA preemption on a negligence claim brought against a freight broker for damages arising from a collision involving one of the broker's drivers. 2018 WL 398235, at *3–5. In evaluating preemption, the district judge noted that the claim asserted was "simply a general negligence claim about the unsafe operation of a truck," and not a claim for "negligent entrustment or negligent hiring," which "might implicitly impose constraints on the operations of a freight broker …." *Id*. at *4. Then, relying primarily on *Hodges*, and *Elam v. Kansas City Southern Railway, Co.*, 635 F.3d 796 (5th Cir. 2011), a case where the Fifth Circuit found no preemption of

general negligence claims under a statute similar to the FAAAA, the district judge found no preemption of the plaintiff's claims. *Id*. at *4–5.

Based on the authority above, this Court concludes that a negligence claim is "related to" a "service" when the claim is "centered on" or "derives" from "a bargained-for or anticipated provision of labor from" a broker or other protected carrier. Here, Elizabeth, unlike the plaintiffs in *Dnow* and *Hodges*, does not assert a general negligence claim derived from the operation of a truck (or a plane, in the case of *Hodges*). Rather, Elizabeth alleges claims derived from Cornerstone's *selection* of a freight carrier, an action which indisputably is a "bargained-for or anticipated provision of labor" from a freight broker. *See* 49 U.S.C. § 13102(2) (defining "broker" as a person[8] "selling, providing, or arranging for, transportation by motor carrier for compensation"). Because Elizabeth's claims derive from a broker's service, this Court concludes that they are "related to" such a service. *See Malik*, 305 F. App'x at 168–69 (claims "centered on" baggage handling "related to" service provided by air carrier).[9]

### 2. "With respect to"

As explained above, the FAAAA's preemption provision differs from the ADA's by requiring that the "price, route, or service" impacted by the law to be preempted be "with respect

---

[8] The FAAAA utilizes the definition of person set forth in 1 U.S.C. § 1, which provides that the word "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." *See* 49 U.S.C. § 13102(18) ("The term 'person', in addition to its meaning under section 1 of title 1, includes a trustee, receiver, assignee, or personal representative of a person.").

[9] *See also Ga. Nut Co. v. C.H. Robinson Co.*, No. 17 C 3018, 2017 WL 4864857, at *3 (N.D. Ill. Oct. 26, 2017) ("Common-law negligent hiring and negligent supervision claims do not expressly reference freight broker services; however, they do have a significant economic effect on those services."); *Volkova v. C.H. Robinson Co.*, No. 16 C 1883, 2018 WL 741441, at *3 (N.D. Ill. Feb. 7, 2018) ("[T]he negligent hiring claims relate to the core service provided by Robinson—hiring motor carriers to transport shipments."); *Krauss v. IRIS USA, Inc.*, No. 17-778, 2018 WL 2063839, at *5 (E.D. Pa. May 3, 2018) ("[T]he negligent hiring claim against C.H. Robinson is that Mr. Krauss's injuries directly flowed from C.H. Robinson's failure to vet freight carrier KV Load. The claim therefore 'relate[s] to the core service provided by Robinson—hiring motor carriers to transport shipments.'") (internal alterations and quotation marks omitted); *ASARCO LLC v. England Logistics Inc.*, 71 F.Supp.3d 990, 1006 (D. Ariz. 2014) ("A fair and commonsense construction of the term 'services', whether read broadly or narrowly with regard to a 'broker' reasonably leads to no other conclusion than that a broker must find a reliable carrier to deliver the shipment.").

9

to the transportation of property." 49 U.S.C. § 14501(c)(1). "That phrase massively limits the scope of preemption ordered by the FAAAA" by requiring that the relevant law "concern a motor carrier's transportation of property." *Pelkey*, 569 U.S. at 261 (quotation marks omitted). Because the word "transportation" includes "arranging for" the transit of property, 49 U.S.C. § 13102(23), this requirement is easily met here.

### 3. Applicable exception

Having concluded that Elizabeth's claims are "related to" a broker service with respect to transportation, preemption is appropriate unless one of the FAAAA's preemption exceptions applies. In this regard, Elizabeth urges the Court to apply the FAAAA's public safety exemption. Doc. #51 at 13–16. This exemption states that the FAAAA's preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). Such provision "evinces a clear purpose to ensure that the preemption of States' economic authority over motor carriers of property 'not restrict' the preexisting and traditional state police power over safety, a field which the states have traditionally occupied." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 426 (2002) (quotation marks omitted). However, because the provision is limited to those laws "with respect to motor vehicles," to fall under the exemption, a properly exercised police power over safety must also "concern" motor vehicles. *See Pelkey*, 569 U.S. at 261 (defining "with respect to" as "concern[ing]"); *FCC v. AT&T Inc.*, 562 U.S. 397, 408 (2011) ("[I]dentical words and phrases within the same statute should normally be given the same meaning."). Motor vehicles are defined in the FAAAA as "a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation." 49 U.S.C. § 13102(16).

Courts are divided on the question of whether negligence claims fall under the definition

10

of "safety regulatory authority of a State," so as to come within the ambit of the exemption. *Compare Huntington Operating Corp. v. Sybonney Express Inc.*, No. H-08-781, 2010 WL 1930087, at *3 (S.D. Tex. May 11, 2010) ("Case law interpreting § 14501(c)(2)(A) refers solely to the ability of the several states to define safety standards and insurance requirements …. The exception is not read to permit a private right of action.") (citing *Ours Garage* and *Cardinal Towing & Auto Repair, Inc. v. City of Bedford*, 180 F.3d 686 (5th Cir. 1999)), *with Rosales v. Redco Transp. Ltd.*, No. 5:14-cv-129 2015 WL 9274068, at *3 (S.D. Tex. Dec. 21, 2015) ("[N]egligence claims like the ones here are part of the states' safety regulatory authority.").[10] However, none of these decisions, as far as this Court can tell, considered the salient question raised by *Ours Garage*—whether common law claims for negligence fall within the "preexisting and traditional state police power over safety."

"Historically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as a 'critical component of the States' traditional ability to protect the health and safety of their citizens.'" *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 544 (1992) (Blackmun, J., concurring in part and dissenting in part)). Given this, there can be no serious dispute that common law claims arising from the negligent procurement of a trailer represent a valid exercise of the state's police power to regulate safety. Nor can there be any question that

---

[10] The defendant in *Rosales* sought leave with the Fifth Circuit to file an interlocutory appeal, which the Fifth Circuit denied. *See Morales v. Samsung SDS Am, Inc.*, No. 16-90003 (5th Cir. Dec. 21, 2015). The plaintiffs contend "[s]aid denial should be conclusive proof that the Fifth Circuit, consistent with the *stare decisis* doctrine, would continue to hold personal injury actions escape federal preemption." Doc. #51 at 14. "The discretion of the court of appeals [to deny leave to file an interlocutory appeal] is so broad that it is difficult to imagine any controlling limit." 16 FED. PRAC. & PROC. JURIS. § 3929 (3d ed.). Consistent with this discretion, courts of appeals have declined to hear interlocutory appeals for numerous reasons unrelated to the merits, such as the need to develop a factual record, *Garcia v. Johanns*, 444 F.3d 625, 636–37 (D.C. Cir. 2006), or general concerns of efficiency, *In re Prudential Lines, Inc.*, 59 F.3d 327, 332–33 (2d Cir. 1995). Insofar as the Fifth Circuit provided no reason for its denial, the Court declines to impute any rationale to the decision, much less one which would form the basis of stare decisis.

such claims, which are centered on a defendant's efforts to place trailers on the highways, concern motor vehicles so as to fall under the exemption provision. Accordingly, the Court concludes that Elizabeth's negligence claims fall within the "safety regulatory authority of a State with respect to motor vehicles" and, therefore, are not preempted.

## V
## Conclusion

For the reasons above, Cornerstone's motion for judgment on the pleadings [22] is **DENIED**.

**SO ORDERED**, this 24th day of October, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**